IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| BIO-MEDIAL APPLICATIONS OF TENNESSEE, INC. d/b/a BMA OF KINGSPORT individually and as ASSIGNEE OF PATIENT,[1] | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:08-CV-228 |
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, | ) ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Now before the court are: "Defendant's Motion for Judgment on the Administrative Record" [doc. 42]; defendant's "Motion for Summary Judgment on the Counterclaim" [doc. 44]; and plaintiff's "Motion for Summary Judgment" [doc. 47]. The motions have been fully briefed and are ripe for the court's consideration. For the reasons that follow, plaintiff's motion will be granted and defendant's motions will be denied.

---

[1] It is apparent from the record that the correct spelling of plaintiff's name is "Bio-*Medical* . . ." (emphasis added). However, as is its practice, the court in its case caption will use the spelling employed by plaintiff in the caption of its complaint, which in this case is "Bio-*Medial* . . . ." (emphasis added).

## I.

*Background*

Plaintiff operates a kidney dialysis center and is the assignee of the retiree health care benefits of a now-deceased patient ("the Patient") insured by defendant's group health plan ("the Plan"). The Patient, who was a covered spouse under the Plan, received dialysis treatment from plaintiff for her end stage renal disease ("ESRD") from August 2005 until her May 2006 death.

Plaintiff billed and was reimbursed by defendant for the dialysis until early 2006 when defendant became aware that the Patient had become eligible for Medicare as of November 1, 2005, due to her ESRD. Defendant then terminated coverage retroactive to the date of Medicare eligibility and recouped most of the payments it had made to plaintiff. Defendant based its decision on section 3.07(b) of the Plan, which terminates coverage no later than the date on which a dependent covered participant becomes entitled to Medicare.

Plaintiff appealed the decision by telephone and then to defendant's Benefits Claims Appeals Committee and its Health and Welfare Trustee Appellate Review Committee. The parties' positions were consistent throughout. Plaintiff argues that defendant is in violation of section (1)(C) of the Medicare Secondary Payer Act ("MSP"), 42 U.S.C. § 1395y(b), which prohibits "taking into account" a person's eligibility for Medicare on the basis of ESRD. Defendant, in reliance on *Blue Cross & Blue Shield of Texas v. Shalala*, 995 F.2d 70 (5th Cir. 1993) ("*Blue Cross Texas*"), maintains that the MSP

2

addresses only changes in *benefits* provided to ESRD Medicare patients but does not prohibit discontinuation of those persons' *coverage* altogether.

Defendant denied plaintiff's appeal at every level, and the instant suit followed. Count one of the present complaint seeks to recover the unpaid benefits due under the Plan pursuant to section 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"). Count two alleges a private cause of action for doubled damages under the MSP. By a prior memorandum and order, count two was dismissed. *See Bio-Medical Applications of Tenn. v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, No. 2:08-CV-228, 2008 WL 5110800 (E.D. Tenn. Dec. 1, 2008). Defendant's counterclaim seeks recovery of $4,036.62 in benefits paid to, but not recouped from, plaintiff.

II.

*Medicare Secondary Payer Act*

The MSP is designed to reduce Medicare spending by making Medicare "the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008) (citation omitted). The statute addresses group health plan treatment of persons who are Medicare eligible, specifically addressing the "working aged," "disabled individuals," and ESRD patients.

3

Captioned "Individuals with end stage renal disease," section 1(C) of the MSP states in relevant part,

> A group health plan . . .
>
> > (i) may not take into account that an individual is entitled to or eligible for benefits under this subchapter under section 426-1 of this title during the [30]-month period which begins with the first month in which the individual becomes entitled to benefits under part A under section 426-1 of this title . . . ; and
>
> > (ii) may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner;
>
> except that clause (ii) shall not prohibit a plan from paying benefits secondary to this subchapter when an individual is entitled to or eligible for benefits under this subchapter under section 426-1 of this title after the end of the [30]-month period described in clause (i).

42 U.S.C. § 1395y(b)(1)(C).[2] At issue in this case are the extent to which a plan may "take into account" ESRD Medicare eligibility under § 1395y(b)(1)(C)(i), and the meaning of § 1395y(b)(1)(C)(ii)'s "differentiation" provision.

### A. "Benefits" v. "Coverage"

In 1993, the Fifth Circuit Court of Appeals in *Blue Cross Texas* was presented with an MSP dispute involving group health plan denial of coverage to ESRD Medicare

---

[2] Section 426-1 of title 42 grants Medicare eligibility to persons medically determined to have ESRD.

patients. On its specific facts, *Blue Cross Texas* is readily distinguishable from the present case. The Fifth Circuit case "raise[d] a single issue of statutory interpretation: whether the 1989 amendment to the Medicare as Secondary Payer (MSP) statute . . . requires group health care plans to offer *continuation* coverage to individuals who are eligible for Medicare because they have End Stage Renal Disease . . . ." *Blue Cross Texas*, 995 F.2d at 71 (emphasis added). The Fifth Circuit excused a *continuation insurer's* noncompliance with the MSP based on a contrary provision found in the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). By contrast, COBRA is not an issue in the case at bar. Instead, the instant Patient already had coverage, and that coverage was terminated because of her ESRD Medicare eligibility.

Factual and procedural distinctions notwithstanding, defendant has for years relied upon *Blue Cross Texas's* broader conclusion that § 1395y(b)(1)(C)(i)'s "'take into account' language does not apply to a health plan's decision to terminate *continuation coverage*. Rather, it applies to a plan's payments of benefits to an individual already covered by the plan." *Id.* at 73 (emphasis added). In reaching that conclusion, the Fifth Circuit compared COBRA's frequent use of the word "coverage" with the MSP's primary use of the term "benefits." *Id.* at 73-74.

Defendant has long argued that taking away *some* of a participant's benefits is prohibited by the MSP, but that eliminating *all* of that same participant's benefits is fine. For two reasons, this court finds defendant's long-term reliance on the *Blue Cross Texas*

5

"benefits"/"coverage" distinction to be misplaced. First, the "single issue" in *Blue Cross Texas* was a conflict between specific provisions of the MSP and COBRA pertaining to continuation coverage. COBRA expressly allows for termination of coverage upon Medicare eligibility. *See id.* at 72; 29 U.S.C. § 1162(2)(D)(ii). COBRA is a statute pertaining to "coverage," thus the importance of the benefits/coverage dichotomy in the Fifth Circuit case. *See Blue Cross Texas*, 995 F.2d at 72-74.

Second, and of greater relevance to the case at bar, *Blue Cross Texas* was decided in 1993. Two years later, the Centers for Medicare and Medicaid Services ("CMS"), Department of Health and Human Services ("DHS"), issued several new regulations. Those regulations provide "[e]xamples of actions that constitute 'taking into account'" [under § 1395y(b)(1)(C)(i)] . . . that an individual is entitled to Medicare on the basis of ESRD . . . ." 42 C.F.R. § 411.108(a). Among the examples is "[t]erminating coverage because the individual has become entitled to Medicare, except as permitted under COBRA continuation coverage provisions . . . ." 42 C.F.R. § 411.108(a)(3); *see also* 42 C.F.R. § 411.161(a)(3) ("This rule [against 'taking into account'] does not prohibit the termination of GHP coverage under title X of COBRA . . . .").

Therefore, in light of *Blue Cross Texas's* distinct facts and the subsequent DHS regulations, the court finds defendant's "benefits"/"coverage" argument to be hollow. The insurance at issue in this case is not *continuation* coverage, and there is no relevant contrary statute at issue in this case - such as COBRA - containing a specific provision that overrides

6

the MSP. By terminating the Patient's existing *coverage*, defendant terminated *all* of her *benefits*. Section 1395y(b)(1)(C)(i) simply does not contain the loophole suggested by defendant. *See* 42 C.F.R. § 411.108(a)(3).

### B. "Differentiation"

The parties do not dispute that a group health plan can terminate coverage for reasons not prohibited by law. Defendant thus argues that § 1395y(b)(1)(C)(i) cannot be read as prohibiting termination of coverage for Medicare-eligible ESRD patients because such a reading would place the Plan in violation of § 1395y(b)(1)(C)(ii)'s "differentiation" provision. As noted above, § 1395y(b)(1)(C)(ii) states that a plan "may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner[.]" According to defendant, the meaning of § 1395y(b)(1)(C)(ii) is that a plan can neither treat ESRD patients less favorably *nor more favorably* than non-ESRD patients.

Intuitively, defendant's reading appears implausible. It is difficult to envision Congressional concern over insurers treating costly ESRD patients *more favorably* than those not suffering from that expensive condition. Nonetheless, the language employed by Congress in § 1395y(b)(1)(C)(ii) is what it is, and on its face the statute prohibits only "differentiat[ing]" in benefits provided to ESRD and non-ESRD patients. Defendant has therefore presented at least an arguable reading of the statute.

7

Because the plain language of § 1395y(b)(1)(C)(ii) is not unambiguous, the court must defer to DHS's interpretation of that statute unless that interpretation is inconsistent with "the policy that Congress sought to implement." *See Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1351 (6th Cir. 1994) (quoting *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981)). As noted above, the MSP "emerged from congressional efforts to reduce the costs of the Medicare program." *Care Choices HMO v. Engstrom*, 330 F.3d 786, 790 (6th Cir. 2003). "Congress clearly intended EGHPs to assume paramount responsibility for funding primary health care benefits . . . ." *United States v. Blue Cross Blue Shield of Mich.*, 859 F. Supp. 283, 286-87 (E.D. Mich. 1994) ("*Blue Cross of Mich.*"). "In the MSP statute Congress made Medicare coverage secondary to any coverage provided by private insurance programs. It did so in order to lower Medicare costs." *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 243 (6th Cir. 1995).

In light of this legislative intent, the court turns to the regulation interpreting § 1395y(b)(1)(C)(ii)'s nondifferentiation requirement. That regulation offers a nonexhaustive sampling of "actions that constitute differentiation in plan benefits." *See* 42 C.F.R. § 411.161(b)(2)(i)-(v). Without exception, the listed examples are of actions that *negatively* impact ESRD patients. None of the listed circumstances treat ESRD patients *more favorably* than persons not suffering from that condition.

8

Specifically cited as an example of differentiation in benefits provided is "*[t]erminating coverage of individuals with ESRD*" in the absence of an ESRD-neutral basis for termination "such as failure to pay plan premiums." *See* 42 C.F.R. § 411.161(b)(2)(i). The agency's regulations have thus answered the statutory ambiguity in a manner consistent with Congress's obvious goal of lowering Medicare costs, and the court accordingly rejects defendant's reading of § 1395y(b)(1)(C)(ii).

III.

*Termination of Coverage*

Having concluded that the MSP prohibits termination of group health plan coverage solely on the basis of ESRD Medicare eligibility except as permitted by COBRA, the court's attention turns to its review of the termination decision now in dispute. In this ERISA action, the parties agree that the familiar arbitrary and capricious standard of review should be applied.[3]

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed

---

[3] This case presents solely a question of law, and the court notes conflicting authority as to whether the standard of review should instead be *de novo*. *Compare Benefits Comm. of Saint-Gobain Corp. v. Key Trust Co. of Ohio*, 313 F.3d 919, 925 (6th Cir. 2002) ("[O]ur role is identical to that of the district court. . . . Our review is *de novo* since only questions of law are involved."), *with Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 986 (6th Cir. 1999) (rejecting the "argument that eligibility determinations are questions of law subject to de novo review"). The court emphasizes that its decision this date would be the same regardless of the standard of review applied.

9

under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115. If a plan grants the administrator or fiduciary the appropriate discretionary authority, the "highly deferential arbitrary and capricious standard of review" is instead applied. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). A plan's grant of discretionary authority to the administrator or fiduciary must be "express." *Perry v. Simplicity Eng'g,* 900 F.2d 963, 965 (6th Cir. 1990).

In the present case, the Plan grants its trustees the "discretionary and final authority" in making benefits determinations and in interpreting Plan provisions. The court is satisfied that the necessary level of discretionary authority is granted by the Plan.

Generally, decisions concerning eligibility for ERISA benefits are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). Nonetheless, a decision can be arbitrary and capricious if adherence to a plan provision results in a violation of federal law. *See Dist. 2, UMWA v. Helen Mining Co.*, 762 F.2d 1155, 1160 (3d Cir. 1985); *Children's Hosp. of Pittsburgh v. 84 Lumber Co. Med. Benefits Plan*, 834 F. Supp. 866, 871-72 (W.D. Pa. 1993). Such is the case before the court. Defendant's adherence both to its Plan termination provisions and to the *Blue Cross Texas* case does not indicate that it carefully deliberated the governing legal standards at issue. *See, e.g., Robinson*, 164 F.3d at 989.

10

As discussed, *Blue Cross Texas* is a readily distinguishable COBRA case which has also received its share of criticism. *See, e.g., Health Ins. Ass'n of America v. Shalala*, 23 F.3d 412, 414 n.2 (D.C. Cir. 1994) ("Thus the Fifth Circuit was not technically correct when it said that 'the MSP statute has never created or extended coverage . . . .'"); *Blue Cross of Mich.*, 859 F. Supp. at 289 (restricting *Blue Cross Texas* to its facts). Most importantly, *Blue Cross Texas* predates the highly relevant 1995 regulations interpreting the MSP.

While the *Blue Cross Texas* court did not have the benefit of those regulations, defendant did. For example, in October 1995 defendant's board of trustees wrote to an attorney representing the United States Department of Labor, Office of the Solicitor, Plan Benefits Security Division. Defendant's letter acknowledged that the 1995 regulations "probably increase the possibility that [CMS] will once again claim that the Fund's interpretation of . . . 42 U.S.C. § 1395y(b)(1)(C) . . . is neither correct nor lawful." Although no other correspondence between defendant and the government is included in the administrative record, the letter's use of the language "once again" evidences some measure of known ongoing dispute regarding the legality of defendant's conduct. The 1995 letter continued to lean on *Blue Cross Texas* even in the face of the new, clear, on-point regulations.

Defendant argues to this court that the government's alleged failure to initiate an enforcement action against the Plan for violation of the MSP somehow indicates approval

11

of its termination policies. This argument is without merit. Federal agencies have limited resources, and an agency decision not to undertake a particular enforcement action does not mean that there was not a violation of federal law. *See Mass. v. EPA*, 549 U.S. 497, 527 (2007); *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985).

In sum, and particularly in light of DHS's 1995 regulations, it is evident that defendant did not carefully deliberate the legal standards governing termination of coverage for ESRD Medicare patients. The Plan termination provision at issue in this case violates the MSP. The court accordingly concludes that defendant's decision to terminate the Patient's Plan coverage was arbitrary and capricious.

## IV.

### *Conclusion*

Plaintiff's motion for summary judgment on count one of its complaint will be granted. Plaintiff is entitled to the assignee benefits due under the Plan for the costs of the prescribed treatment of the Patient, and defendant is responsible as the primary payer for that treatment provided to the Patient from November 1, 2005, until her May 2006 death.

Defendant's summary judgment motions will be denied and its counterclaim will be dismissed. An order consistent with this opinion will be entered.

ENTER:

                                                  s/ Leon Jordan
                                             United States District Judge